IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| VALERIE E. HUNTER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:17cv112 (DJN) |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
|     Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

On October 2, 2014, Ms. Hunter ("Plaintiff") applied for Social Security Disability

Benefits ("DIB"), alleging disability due to a depressive disorder, anxiety disorder, myocardial

infarction, hypertension and cardiomyopathy, with an alleged onset date of April 10, 2014. The

Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon

reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a

written decision and the Appeals Council denied Plaintiff's request for review, rendering the

ALJ's decision as the final decision of the Commissioner.

Plaintiff seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g),

arguing that the ALJ erred in properly analyzing opinions of Plaintiff's treating physicians and

other providers. (Mem. in Support of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 13) at 2.)

Plaintiff further argues that the ALJ failed to properly account for her moderate difficulties in

concentration, persistence and pace, and that he erred in assessing Plaintiff's credibility by

failing to acknowledge her work history in his assessment. (Pl.'s Mem. at 2, 9.) This matter

now comes before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1), on the

parties' cross-motions for summary judgment, rendering the matter ripe for review.[1] For the

reasons that follow, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (ECF

No. 12), GRANTS Defendant's Motion for Summary Judgment (ECF No. 14) and AFFIRMS the

final decision of the Commissioner.

## I.     PROCEDURAL HISTORY

On October 3, 2014, Plaintiff filed an application for DIB with an alleged onset date of

April 10, 2014. (R. at 236-37.) The SSA denied these claims initially on December 15, 2014,

and again upon reconsideration on May 7, 2015. (R. at 120-30, 133-44.) At Plaintiff's written

request, the ALJ held a hearing on September 14, 2016. (R. at 34-69.) On September 27, 2016,

the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not

qualify as disabled under the Act, because Plaintiff could perform work as a laundry sorter,

clerical assistant or packager. (R. at 19-29.) On December 12, 2016, the Appeals Council

denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the

Commissioner subject to review by this Court. (R. at 1-4.)

## II.     STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.

Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a

---

[1]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc.
R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of
birth (except for year of birth), and any financial account numbers from its consideration of
Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to
only the extent necessary to properly analyze the case.

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the

ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. § 404.1545(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

### III.    THE ALJ'S DECISION

On September 14, 2016, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 34-69.) On September 27, 2016, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 19-29.) The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 19-21.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 13, 2016, more than two years after the alleged onset date. (R. at 21.) At step two, the ALJ found that Plaintiff exhibited the following severe impairments: (1) depressive disorder; (2) anxiety disorder; (3) myocardial infarction; (4) hypertension; and, (5) cardiomyopathy. (R. at 21-22.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 22-23.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with the following non-exertional limitations: (1) she must avoid any and all concentrated exposure to hazards such as dust, fumes and pulmonary irritants, as well as unprotected heights and moving mechanical parts; (2) she can only perform simple, routine tasks, not at production rate; (3) she has no more than occasional changes in routine work settings; (4) she has no more than occasional contact with supervisors and co-workers; and, (5) she has no interaction with the public. (R. at 23-28.) At step four, the ALJ found that Plaintiff cannot perform any past relevant work. (R. at 28.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, including as a laundry sorter, clerical assistant or packager. (R. at 28-29.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 29.)

IV.    ANALYSIS

Plaintiff, forty-eight years old at the time of this Report and Recommendation, previously worked as a customer service representative and a home health care companion. (R. at 28, 120, 261-63.) She applied for Social Security Benefits, alleging disability due to a heart attack, depression and anxiety, with an alleged onset date of April 10, 2014. (R. at 270.) Plaintiff's appeal to this Court alleges that the ALJ erred in rejecting Andrew D. Cook, M.D.'s opinion, awarding partial weight to the opinions of Tonjanika Boyd, PMHNP-BC, Rashika Wallace, LCSW and Prakash Ettigi, M.D., and giving significant weight to the state agency expert psychologists' opinions. (Pl.'s Mem. at 3-7.) Plaintiff also alleges that the ALJ erred by failing to account for her moderate difficulties in concentration, persistence or pace. (Pl.'s Mem. at 9.) Lastly, Plaintiff argues that the ALJ lacked substantial evidence in evaluating Plaintiff's

credibility. (Pl.'s Mem. at 16-19.) For the reasons set forth below, the ALJ did not err in his decision.

## A. The ALJ Did Not Err in his Evaluations of the Opinion Evidence.

Plaintiff argues that the ALJ afforded too little weight to the opinions of Plaintiff's treating sources and too much weight to the state agency expert psychologists. (Pl.'s Mem. at 3-7.) Defendant responds that substantial evidence supports the ALJ's analysis and he appropriately reconciled conflicting medical opinions. (Mem. in Support of Def.'s Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 14) at 13-16.)

The ALJ based his opinion on whether Plaintiff's medically-determinable combination of severe impairments significantly limited her ability to do basic work activities by analyzing her medical records and medical expert evaluations. 20 C.F.R. §§ 404.1512, 404.1527. When multiple medical opinions exist and prove inconsistent with each other, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. §§ 404.1527(c)(2)-(6), (d). Only an "acceptable medical source" can, but does not have to, offer an opinion entitled to controlling weight. SSR 06-03p.[2] Licensed physicians and licensed or certified psychologists constitute acceptable medical sources. §§ 404.1513(a), 404.1527(a) (2014). The ALJ may also consider evidence from "other sources" — including nurse-practitioners, therapists and social workers — as evidence of the severity of impairment or for

---

[2]     Effective March 27, 2017, the SSA rescinded SSR 06-03p, instead incorporating some of the Ruling's policies into 20 C.F.R. § 404.1527. 82 Fed. Reg. 5844-01, at 5844–45, 5854–55 (Jan. 18, 2017). Plaintiff filed her claim on October 3, 2014, before this regulation took effect. (R. at 236-37.) The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting retroactive rulemaking power). Because the regulation does not have retroactive effect, SSR 06-03p applies to Plaintiff's claim.

the effect that the impairments have on the claimant's ability to work. § 404.1513(d).

Regulations and case law require the ALJ to give a treating source's opinion controlling weight contingent upon substantial support obtained through medically acceptable clinical and laboratory diagnostic techniques that prove not inconsistent with other substantial evidence. § 404.1527(c)(2); *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017); *Craig*, 76 F.3d at 589; SSR 96-2p.[3] Notably, the ALJ does not have to accept opinions from a treating source if it opines on the claimant's ultimate disability for employment purposes. § 404.1527(d)(1). Further, the regulations do not require that the ALJ accept an opinion from a treating source which is inconsistent with other evidence or is not well-supported. § 404.1527(c)(3)-(4).

Unless the ALJ "dredged up 'specious inconsistencies,'" courts generally do not interfere with the ALJ's decision. *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1999)). In other words, the ALJ's assignments of weight stand unless the ALJ failed to offer a sufficient reason for his decision. *Id.*

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. § 404.1527(c). The regulations vest the authority to determine whether a claimant is disabled in the ALJ alone, not in the treating source.

---

[3] Effective March 27, 2017, the SSA rescinded SSR 96-2p, and it no longer applies the "treating physician rule." 20 C.F.R. § 404.1520c (2017). Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them based upon the two most important factors of supportability and consistency. §§ 404.1520c(a), (c)(1)-(2). However, as stated in footnote 2, the Agency cannot engage in retroactive rulemaking. Because Plaintiff filed her claim before this change took effect, the Court will review the ALJ's decision under the old rule codified by 20 C.F.R. § 404.1527.

§ 404.1527(d)(1). These same factors may be applied in evaluating opinion evidence from "other sources." SSR 06-03p.

### 1. Dr. Cook's Opinion.

Plaintiff argues that given her long treatment history with Dr. Cook, his opinion warrants more weight. (Pl.'s Mem. at 5.) Defendant argues that the ALJ properly awarded "no weight" to Dr. Cook's letter, because he made a conclusory statement about Plaintiff's ultimate disability — an issue reserved only for the Commissioner — and could not speak specifically about Plaintiff's limitations, deferring instead to Dr. Ettigi. (Def.'s Mem. at 16.)

The ALJ assigned no weight to Dr. Cook's opinion. (R. at 27.) The ALJ reasoned that Dr. Cook wrote a conclusory opinion without offering specific functional limitations, inconsistent with both Plaintiff's treatment records and mental status examination findings. (R. at 27.) Within his letter, Dr. Cook wrote that Plaintiff's "disability . . . has been primarily due to her mental health problems." (R. at 537.) Dr. Cook further opined that Plaintiff "had significant depression after her heart attack [and] due to . . . work stress and health problems of family members." (R. at 537.) Dr. Cook concluded that Plaintiff's mental health limited her ability to maintain employment and left her unable to manage her anxiety. (R. at 537.) After making these statements, Dr. Cook deferred to Dr. Prakash Ettigi for "specific limitations." (R. at 537.)

The ALJ's decision to afford Dr. Cook's letter no weight finds support from the medical evidence in the record. Plaintiff had a heart attack on April 10, 2014. (R. at 41.) On June 30, 2014, Plaintiff began a series of monthly visits to Dr. Cook after her cardiologist suggested that she see a primary care physician about her depression and stress-related problems. (R. at 554.) Dr. Cook suggested that Plaintiff's depression "could be from a combination of grief from [her] mother's death, recent heart attack and cumulative stress with work and family needs." (R. at

555.) Plaintiff exhibited normal speech, behavior, judgment, thought content, cognition and memory, and a depressed mood. (R. at 555.) Dr. Cook referred Plaintiff to a psychologist for her anxiety and depression. (R. at 555.)

On July 16, 2014, Plaintiff's condition remained largely the same, except that she suffered from an allergic reaction from a tick bite and began a prescription for her allergy medicines. (R. at 556-57.) On July 24, 2014, Plaintiff again exhibited similar conditions, and suffered from lightheadedness possibly due to her anxiety. (R. at 559-60.) During a follow-up visit on August 25, 2014, Plaintiff exhibited similar conditions, reported severe headaches, chest pains and — without medical guidance — she stopped taking her prescribed Zoloft and Mirtazepine. (R. at 562-64).

On October 21, 2014, Plaintiff reported that she suffered from anxiety attacks and headaches about every two days. (R. at 565.) However, she also reported improvements in her anxiety and depression with counseling. (R. at 567.) Dr. Cook suggested to halve or quarter her current dosage of Ativan if it caused Plaintiff too much sleepiness. (R. at 567.)

On November 4, 2014, Plaintiff received osteopathic manipulation treatment. (R. at 569-70.) On January 26, 2015, Plaintiff reported chest pain and headaches, but she appeared otherwise normal upon examination. (R. at 573.) Dr. Cook encouraged Plaintiff to see a specialist for her stress headaches and to consider physical therapy if the pain became chronic. (R. at 575.) Plaintiff received another osteopathic manipulation treatment and reported neck swelling and elbow pain on February 23, 2015. (R. at 577, 579.)

On March 25, 2015, Plaintiff presented with normal speech, behavior, judgment, thought content, cognition and memory, as well as a depressed, anxious mood, and worsening headaches. (R. at 581, 583.) On June 26, 2015, Plaintiff reported that her headaches and elbow pain

occurred every other day and lasted one to twelve hours. (R. at 584.) On August 4, 2015, Plaintiff again exhibited similar conditions. (R. at 588-90.) On October 26, 2015, Plaintiff's condition remained unchanged, except that she reported a decreased appetite and insomnia. (R. at 592.)

On March 28, 2016, Plaintiff reported increased anxiety and headaches, but that she also wanted to start working half-days for six weeks. (R. at 601-03.) Despite reporting more frequent anxiety and headaches, Dr. Cook's notations remained largely the same. (R. at 603.) On May 4, 2016, Plaintiff again exhibited normal speech, behavior, judgment, thought content, cognition and memory, and a depressed mood. (R. at 604, 606.) During her final visit on July 18, 2016, Plaintiff reported an infected tooth, problems seeing, depression and breast pain. (R. at 607.) Dr. Cook again noted an unremarkable psychiatric evaluation. (R. at 609.)

Overall, the objective medical evidence in the record supports the ALJ's decision to afford no weight to Dr. Cook's opinion. Dr. Cook offered no specific work-related limitations. (R. at 537.) Instead, he acknowledged that Dr. Ettigi primarily managed Plaintiff's anxiety and depression, and deferred to Dr. Ettigi for a more detailed assessment. (R. at 537.) Moreover, Dr. Cook did not refer to any of his past moderate findings. (R. at 537.) During twelve of her thirteen visits for anxiety and depression, Plaintiff exhibited normal speech, behavior, judgment, thought content, cognition and memory. (R. at 555, 557, 560, 563, 567, 575, 583, 586, 594, 603, 606, 609.) During the one other visit, Plaintiff exhibited a "normal mood and affect" instead of a depressed or anxious mood. (R. at 590.) Although Plaintiff visited Dr. Cook two other times, he did not record any psychiatric notes. (R. at 570, 579.) Given these consistent and unremarkable findings, the ALJ reasonably awarded no weight to Dr. Cook's conclusory letter.

### 2. Ms. Boyd's Opinion.

Next, Plaintiff argues that the opinions of Ms. Boyd and Ms. Wallace warrant more
weight, because both appropriately and fully detailed Plaintiff's symptoms based on their long
histories of treating her. (Pl.'s Mem. at 5-7.) Defendant argues that Plaintiff's extensive medical
record, reported daily activities and the state agency psychologists' opinions support the ALJ's
decision to award partial weight to Ms. Boyd and Ms. Wallace's opinions. (Def.'s Mem. at 16-
18.)

The ALJ awarded partial weight to Ms. Boyd's opinion. (R. at 27.) The ALJ did not
consider Ms. Boyd — a nurse practitioner — an acceptable medical source. (R. at 27.) He
reasoned that the record did not entirely support her opinion, that she declined to offer specific
limitations after a history of treating Plaintiff and that she drew a conclusion reserved for only
the Commissioner. (R. at 27.) Ms. Boyd's letter detailed Plaintiff's depression after her
mother's death, as well as her "sleep difficulty, poor concentration, weight loss, decreased
appetite, severe anxiety . . . crying spells, panic attacks that consist of heart palpitations,
jitteriness and becoming diaphoretic, flashbacks and anhedonia." (R. at 538.) Ms. Boyd opined
that, because of the combination of Plaintiff's substantial symptoms with her insignificant
progress in psychotherapy and medications, Plaintiff could "not . . . work in any capacity at the
present time or in the foreseeable future." (R. at 538.)

The ALJ's decision to afford Ms. Boyd's opinion partial weight finds support from
medical evidence in the record. At the outset, the ALJ correctly noted that as a nurse-
practitioner, Ms. Boyd does not qualify as an acceptable medical source. 20 C.F.R.

11

§ 404.1513(a); (R. at 27.) Nonetheless, given Plaintiff's treatment history with Ms. Boyd, the ALJ still considered Ms. Boyd's opinion as "other source" evidence of the severity of Plaintiff's impairments and their effect on her ability to work. § 404.1513(d); (R. at 27.)

Ms. Boyd treated Plaintiff during many of her visits to the Panic, Anxiety & Depression Center of Virginia (the "Panic Anxiety Center") under the supervision of Dr. Ettigi. (R. at 538.) Plaintiff visited the Panic Anxiety Center three times in September 2014 and then roughly once per month from October 2014 to August 2016. (R. at 475-81, 524-536, 540-53, 611-23.) During these visits, Ms. Boyd treated Plaintiff on the following dates: September 16, 2014; September 30, 2014; April 21, 2015; May 20, 2015; June 22, 2015; July 20, 2015; August 21, 2015; November 13, 2015; and, December 27, 2015. (R. at 478, 524, 532, 540, 617-18, 621-23.)

On September 3, 2014, Plaintiff explained that she suffered from depression since her mother's death the previous year, suffered a heart attack in April 2014 and that she had difficulty recovering emotionally ever since those two events. (R. at 479.) On September 16, 2014, Plaintiff exhibited depression, unchanged progress and a mild level of functional impairment. (R. at 478.) Ms. Boyd noted Plaintiff's sad affect, depressed mood, poor insight and appearance, and fair judgment. (R. at 478.) On September 30, 2014, Plaintiff showed worsened progress, depression, anxiety, flat affect and fair insight. (R. at 477.)

From October to December 2014, Plaintiff's condition improved slightly with moderate levels of functional impairment, depressed mood, good insight, intact memory and good to fair judgment. (R. at 529-31.) On November 10, 2014, Plaintiff reported that she stopped taking Celexa without medical recommendation, and that she did not take Ativan for an anxiety attack that occurred the previous week. (R. at 547.)

On January 9, 2015, Plaintiff exhibited good insight and judgment, sad affect, and an anxious mood. (R. at 528.) On February 9, 2015 and March 9, 2015, Plaintiff exhibited a flat affect, depressed mood and fair judgment. (R. at 543-44.) Although Ms. Boyd marked that Plaintiff's progress worsened on March 24, 2015, Plaintiff exhibited only a mild level of functional impairment. (R. at 542.) From April to August 2015, Plaintiff exhibited largely similar conditions, including a moderate level of functional impairment, stable mood and flat affect. (R. at 540-41, 621-23.)

From September to November 2015, Plaintiff exhibited a depressed or sad affect, anxious or depressed mood and fair to limited insight. (R. at 618-20.) On December 27, 2015, Plaintiff's progress worsened to a moderate level of functional impairment. (R. at 617.) On February 9, 2015, Ms. Boyd observed only a mild level of functional impairment, depressed mood and fair insight and judgment. (R. at 616.) From March to August 2016, Plaintiff's conditions remained largely the same, frequently exhibiting a stable mood and no designated level of functional impairment. (R. at 611-15.)

To summarize, out of the twelve visits that recorded Plaintiff's functional impairments from a scale of mild to severe, Plaintiff showed mild functional impairments three times and moderate functional impairments nine times. (R. at 475-79, 524-536, 540-53, 611-23.) During her mental status examinations, Plaintiff exhibited sad, anxious, flat affect and depressed or anxious mood, but also fair to good insight (poor insight one time), judgment and eye contact, and generally logical thought process, intact memory and pleasant/cooperative attitude. (R. at 475-79, 524-536, 540-53, 611-23.)

As discussed above, Plaintiff exhibited normal speech, behavior, judgment, thought content, cognition and memory during the majority of her visits to Dr. Cook. (R. at 555, 557,

560, 563, 567, 575, 583, 586, 594, 603, 606, 609.) And, as further detailed below, both state agency expert psychologists' opinions provide further support for the ALJ's decision to afford partial weight to Ms. Boyd's opinion. After examining all of the available medical evidence, state agent expert psychologist, Joseph Leizer, Ph.D., opined that Plaintiff's only moderate limitation in concentration and persistence involved her ability to carry out detailed instructions, to complete a workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 128.) Further, Dr. Leizer opined that Plaintiff's only moderate social interaction limitation involved her ability to interact appropriately with the general public. (R. at 128.) The opinion of the other state agency expert psychologist, Jack Hutcheson, M.D., only differed from Dr. Leizer's by marking Plaintiff's moderate limitation in performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances and being able to respond appropriately to changes in the work setting. (R. at 140-41.)

Plaintiff's testimony regarding her daily activities further supports the ALJ's decision to afford partial weight to Ms. Boyd's opinion. Plaintiff testified that she cared for her mother before she died. (R. at 45.) Plaintiff helped her son wake up in the mornings before school, showered daily, dressed herself and cooked her own microwavable meals. (R. at 48-50.) Further, she testified that she went grocery shopping with her sister and attended church once or twice per month. (R. at 50-51.) Plaintiff socialized with her sister about three times per week. (R. at 52.) According to Dr. Leizer, Plaintiff reported that she could independently go out, take her medications, infrequently take walks, wash laundry and dishes, and clean with the help of her seventeen-year-old son. (R. at 122.) These activities demonstrate that Plaintiff retained greater functional capacity than suggested by Ms. Boyd.

Given Ms. Boyd's long history of treating Plaintiff, the ALJ properly awarded partial weight to her opinion. (R. at 27, 475-79, 524-536, 540-53, 611-23.) Because Ms. Boyd produced consistent findings that Plaintiff exhibited only mild to moderate functional impairments during mental health examinations, the ALJ reasonably awarded partial weight to Ms. Boyd's partially inconsistent, conclusory letter. While Ms. Boyd detailed portions of Plaintiff's treatment history and symptoms, she did not articulate any specific limitations that Plaintiff would have in the workplace. (R. at 538.) Moreover, because Plaintiff's statutory disability status remains an issue reserved to the Commissioner, the ALJ appropriately dismissed Ms. Boyd's conclusion that Plaintiff cannot work. 20 C.F.R. § 404.1527(d) (2014); (R. at 27.)

### 3. Ms. Wallace's Opinion.

Again, Plaintiff asserts that Ms. Wallace's opinion warrants more weight, because of her long treatment history and the detailed symptoms that she included. (Pl.'s Mem. at 6-7.) In response, Defendant argues that substantial evidence supports the assignment of weight. (Def.'s Mem. at 18-19.) Further, Defendant argues that Ms. Wallace does not qualify as an acceptable medical source, and that the ALJ appropriately weighed her opinion given her failure to submit any supporting treatment records. (Def.'s Mem. at 18-19.)

The ALJ assigned Ms. Wallace's opinion partial weight. (R. at 27.) The ALJ found that Ms. Wallace — a licensed clinical social worker — did not qualify as an acceptable medical source, that the record did not entirely support her opinion and that her opinion overstated Plaintiff's limitations. (R. at 27.)

At the outset, as with Ms. Boyd, the ALJ correctly noted that, as a licensed clinical social worker, Ms. Wallace does not qualify as an acceptable medical source. 20 C.F.R.

§ 404.1513(d)(3); (R. at 27.) However, given her history of treating Plaintiff, the ALJ still considered Ms. Wallace's opinion. (R. at 27.) Plaintiff originally began therapy with Ms. Wallace in 2015 at the Panic Anxiety Center and later transferred to Ms. Wallace's private practice in 2016. (R. at 539.) On August 4, 2016, Ms. Wallace wrote that Plaintiff presented with the following symptoms of major depressive disorder and generalized anxiety disorder: excessive crying; low motivation; angry thoughts; easily irritated and frustrated; isolation from social settings; isolation at home for multiple days; extreme nervousness; shortness of breath; excessive worrying; and, paranoia. (R. at 539.) Ms. Wallace further noted Plaintiff's difficulty with social interactions, often resulting in severe anxiety and symptoms of a panic attack. (R. at 539.) Although Ms. Wallace no longer saw Plaintiff on a regular basis, she opined that Plaintiff should continue treatment for managing symptoms from her depression and anxiety. (R. at 539.)

On August 10, 2016, Ms. Wallace completed a mental assessment of Plaintiff. (R. at 654-56.) Ms. Wallace indicated that Plaintiff exhibited extreme limitations in understanding, remembering and carrying out detailed instructions, as well as making simple work-related decisions. (R. at 654.) Additionally, Plaintiff exhibited marked limitations in understanding, remembering and carrying out short, simple instructions. (R. at 654.)

Substantial evidence supports the ALJ's decision to assign partial weight to Ms. Wallace's opinion. The medical records provided by Dr. Cook and Dr. Ettigi do not entirely comport with Ms. Wallace's opinion. As discussed above, medical records taken under Dr. Ettigi's supervision from September 16, 2014 to August 1, 2016 show unremarkable changes in Plaintiff's mood or behavior. (R. at 475-79, 524-536, 540-53, 611-23.) Although Plaintiff exhibited mild to moderate functional impairments and anxious or depressed moods during her monthly visits, she also displayed fair to good insight, judgment and eye contact, logical thought

process, intact memory and a cooperative attitude. (R. at 475-79, 524-536, 540-53, 611-23.) Medical records provided by Dr. Cook also generally show stability in Plaintiff's symptoms, including normal speech, behavior, judgement, thought content, cognition and memory. (R. at 555, 557, 560, 563, 567, 575, 583, 586, 594, 603, 606, 609.)

Additionally, Plaintiff's testimony detailing her daily activities further supports the ALJ's decision. Plaintiff cared for her mother and son, dressed, showered, and cooked simple meals for herself, attended church one or twice a month, went shopping with her sister and visited with her sister three times per week. (R. at 48-52.)

Given that Ms. Wallace failed to provide any contemporaneous treatment notes and that all other medical records from Dr. Cook and Dr. Ettigi indicate less severe limitations, the record does not support the extremity of her opinion. Moreover, the extreme limitations opined to by Ms. Wallace conflict with Plaintiff's admitted daily activities. Thus, substantial evidence supports the ALJ's assignment of partial weight to Ms. Wallace's opinion.

### 4. Dr. Ettigi's Opinion

Additionally, Plaintiff argues that Dr. Ettigi's opinion that Plaintiff had marked limitations responding appropriately to work pressures and changes in routine or usual work settings warranted more weight. (Pl.'s Mem. at 4-5.) Defendant responds that Dr. Ettigi's treatment notes support the ALJ's decision to discount Dr. Ettigi's ultimate assessment of Plaintiff's marked limitations, and that Dr. Ettigi does not possess the same expertise as the state agency expert psychologists. (Def.'s Mem. at 19-20.)

The ALJ found that that medical record did not entirely support Dr. Ettigi's opinion, and thus he afforded it only partial weight. (R. at 27-28.) Further, the ALJ found that Dr. Ettigi's opinion overstated Plaintiff's limitations when compared to her contemporaneous treatment

record. (R. at 27-28.) The ALJ also found that Dr. Ettigi made an assessment regarding Plaintiff's ability to respond to work pressures and changes, "which is outside of his scope of expertise." (R. at 28.)

Dr. Ettigi, a psychiatrist, completed a mental RFC assessment for Plaintiff on August 23, 2016. (R. at 657-62.) Dr. Ettigi indicated that Plaintiff had moderate limitations interacting appropriately with supervisors, co-workers and the public. (R. at 658.) Additionally, Dr. Ettigi noted that Plaintiff exhibited marked limitations responding appropriately to work pressures and changes in a usual, routine work setting. (R. at 658.) Dr. Ettigi further noted Plaintiff's moderate limitation in making judgments regarding simple work-related decisions. (R. at 660.) According to Dr. Ettigi, Plaintiff had poor concentration and motivation to complete tasks and a poor ability to deal with change. (R. at 658.) Lastly, Dr. Ettigi noted Plaintiff's slight limitations understanding, remembering or carrying out detailed instructions, and no limitations with short, simple instructions. (R. at 660.)

Dr. Ettigi supervised Plaintiff's treatment visits conducted at the Panic Anxiety Center, previously discussed in detail regarding Ms. Boyd's opinion. (R. at 475-79, 524-536, 540-53, 611-23.) Out of the twelve visits to the center that recorded Plaintiff's functional impairments from a scale of mild to severe, Plaintiff exhibited mild functional impairments three times and moderate functional impairments nine times. (R. at 475-79, 524-536, 540-53, 611-23.) During her mental status examinations, Plaintiff exhibited sad, anxious, flat affect and depressed or anxious mood, but also fair to good insight (poor insight one time), judgment and eye contact, and generally logical thought process, intact memory, and pleasant/cooperative attitude. (R. at 475-79, 524-536, 540-53, 611-23.) Similarly, the medical records provided by Plaintiff's visits

to Dr. Cook also revealed her normal speech, behavior, judgment, thought content, cognition and memory. (R. at 555, 557, 560, 563, 567, 575, 583, 586, 594, 603, 606, 609.)

Given that Dr. Ettigi's treatment notes never indicated that Plaintiff experienced more than moderate symptoms or functional limitations, the ALJ appropriately concluded that the record did not support the marked limitations outlined in Dr. Ettigi's opinion. Again, Plaintiff's ability to perform some daily living activities further supports the ALJ's decision. While the record did not support the most extreme of Dr. Ettigi's opinions, the ALJ still took Dr. Ettigi's opinion into account and limited Plaintiff's interactions with others in the RFC accordingly. (R. at 23, 27.) Substantial evidence supports the ALJ's decision.

### 5. The State Agency Expert Psychologists' Opinions

Finally, Plaintiff argues that the ALJ erred in giving significant weight to the state agency expert psychologists' opinions, because they did not review medical opinions and records that came about after their respective reviews of Plaintiff's claim. (Pl.'s Mem. at 14.) Defendant responds that no later evidence in the record suggests a significant change to Plaintiff's condition to question the continued validity of the state agency experts' opinions. (Def.'s Mem. at 20-21.)

The ALJ found that the overall evidence in the record supports the state agency expert psychologists' opinions and thus awarded them significant weight. (R. at 26.) Plaintiff argues that these opinions did not warrant such weight, because the state agency experts did not personally examine Plaintiff, nor did they have the benefit of reviewing later medical records and opinions. (Pl.'s Mem. at 14-15.) Defendant responds that the ALJ reasonably assigned significant weight, because Plaintiff experienced no significant change to her condition after the state agency experts issued their opinion. (Def.'s Mem. at 20-21.)

State agency psychological consultants are highly qualified physicians who are experts in Social Security disability evaluation. 20 C.F.R. § 404.1513a(b)(1). Therefore, when considering the opinion of a state agency psychologist, the ALJ must evaluate those findings just as he would for any other medical opinion. § 404.1513a(b)(1). Simply because a state agency expert opinion occurred before other evidence in the record does not render the opinion unreliable. *Price v. Comm'r, Soc. Sec. Admin.*, 2016 WL 7744395, at *8 (D.S.C. Dec. 29, 2016), *R. & R. adopted*, 2017 WL 131843 (D.S.C. Jan. 13, 2017) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)) (recognizing that a delay always exists between the consultant's report and the ALJ's decision). Similarly, treating physician opinions that occur after the state agency expert's opinion do not necessarily warrant greater weight. *Geiger v. Astrue*, 2013 WL 317564, at *7 (W.D. Va. Jan. 27, 2013); *Caudill v. Astrue*, 2012 WL 4458209, at *6 (W.D. Va. July 26, 2012). However, a significant change in a plaintiff's condition following the consultant's opinion may reasonably alter its validity. *Hampton v. Colvin*, 2015 WL 5304294, at *22 (S.D. W. Va. Aug. 17, 2015).

First to review Plaintiff's claim, state agency expert Dr. Leizer submitted a disability determination explanation on December 11, 2014. (R. at 120-30.) Dr. Leizer reviewed evidence submitted by Brook Run Family Physicians, the Panic Anxiety Center, Bon Secours Memorial Regional Medical Center, Henrico Cardiology Associates, and Med Virginia, as well as pain questionnaires submitted by Plaintiff and Plaintiff's work history. (R. at 121-22.) Dr. Leizer found that Plaintiff exhibited moderate difficulty maintaining social functioning, concentration, persistence or pace, and mild restrictions of activities of daily living. (R. at 124.) Furthermore, Dr. Leizer found that Plaintiff had no significant limitations to her ability to remember locations and work-like procedures or her ability to understand and remember very short and simple

instructions. (R. at 127.) Although Dr. Leizer noted Plaintiff's moderate difficulties with detailed instructions, and that Plaintiff's depression would preclude her from more detailed work, she "remain[ed] capable of completing simple and routine tasks." (R. at 127.) According to Dr. Leizer, Plaintiff also had moderate limitations interacting appropriately with the general public. (R. at 128.)

Dr. Leizer found that Plaintiff had no significant limitations in the following areas: (a) carrying out very short and simple instructions; (b) maintaining attention and concentration for extended periods; (c) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; (d) sustaining an ordinary routine without special supervision; (e) working in coordination with or in proximity to others without being distracted by them; (f) making simple work-related decisions; (g) asking simple questions or requesting assistance; (h) accepting instructions and responding appropriately to criticisms from supervisors; (i) getting along with co-workers or peers without distracting them or exhibiting behavioral extremes; and, (j) maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. (R. at 128.)

On May 1, 2015, Dr. Hutcheson conducted a second state agency disability determination explanation. (R. at 133-44.) In addition to the evidence that Dr. Leizer reviewed, Dr. Hutcheson also reviewed updated records from the Panic Anxiety Center, Henrico Cardiology Associates and Brook Run Family Physicians that were received in April 2015. (R. at 134-35.) Dr. Hutcheson's opinion differed from Dr. Leizer's opinion in that Dr. Hutcehson found that Plaintiff had moderate limitations in (1) maintaining attention and concentration for extended periods, and (2) performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances. (R. at 141-42.) Additionally, Dr. Hutcheson's

opinion eliminated any significant limitations for carrying out detailed instructions. (R. at 141-42.)

Medical records provided by both Dr. Cook and Dr. Ettigi do not indicate drastic changes to Plaintiff's condition from the time of Dr. Leizer's opinion to Dr. Hutcheson's. (R. at 525-28, 542-45, 573-83.) Rather, medical records from Dr. Ettigi's office similarly show mild to moderate functional impairment level, depression and anxiety. (R. at 525-28, 542-45.) Likewise, Plaintiff exhibited an anxious, depressed mood, but displayed normal speech, behavior, judgment, thought content, cognition and memory when treated by Dr. Cook during this time frame. (R. at 573-83.)

Thus, the insignificant alterations to Plaintiff's medical history between December 11, 2014 and May 1, 2015 fail to suggest that the experts' opinions should have significantly varied. (R. at 525-28, 542-45, 573-83.) Further, the minimal changes to Plaintiff's medical history after May 1, 2015 fail to suggest any significant change to Plaintiff's condition sufficient to question the continued validity of the expert opinions. (R. at 540, 584-623.) Although a significant proportion of Plaintiff's medical history postdated Dr. Leizer's opinion, no significant changes in her condition occurred thereafter. (R. at 475-79, 524-36, 540-623.) Thus, substantial evidence supports the ALJ's decision to afford significant weight to the state agency experts' opinions.

## B. The RFC Reasonably Accounted for Plaintiff's Moderate Difficulties in Concentration, Persistence or Pace.

Plaintiff asserts that the RFC failed to reasonably account for her moderate difficulties in concentration, persistence or pace. (Pl.'s Mem. at 9). Plaintiff argues that the ALJ failed to satisfy *Mascio v. Colvin* by equating the ability to perform simple tasks with the ability to stay on task. 780 F.3d at 638; (Pl.'s Mem. at 9). Defendant distinguishes this case from *Mascio* by

noting that the ALJ here engaged in a more substantial analysis and accounted for Plaintiff's limitations in the RFC. (Def.'s Mem. at 22.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1). In making an RFC determination, the ALJ assesses what Plaintiff can ably perform in light of examining all of her physical and mental impairments through a two-part analysis. §§ 404.1520(e), 404.1545; SSR 96-8p. The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* 20 C.F.R. § 404.1529(a); SSR 96-7p. First, the ALJ determines whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Craig*, 76 F.3d at 594; SSR 96-7p, at 1-3. In doing so, the ALJ must consider all the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5 n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on all of the relevant evidence in the case record"). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second step requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects her ability to work. *Craig*, 76 F.3d at 595.

If the ALJ determines that a mental impairment exists, the ALJ "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [her] findings." *Patterson v., Comm'r, Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir.

2017). Among other factors, the ALJ must document specific findings as to the degree of limitation of Plaintiff's concentration, persistence or pace. *Id.*

Then, at the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, the claimant could perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). The Commissioner can carry her burden in this step with the testimony of a VE. 20 C.F.R. § 404.1566(e). During the administrative hearing, the ALJ must pose hypothetical questions to the VE that accurately represent the claimant's RFC, so that the VE can testify about any jobs in the national economy that the claimant could perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

In *Mascio*, the Fourth Circuit recognized that a hypothetical fails if the ALJ does not account for a relevant factor when determining the claimant's RFC. 780 F.3d at 638. The hypothetical presented in *Mascio* failed to address the plaintiff's mental limitation, even though the ALJ found that the plaintiff had moderate difficulties maintaining concentration, persistence and pace. *Id.* Further, the Fourth Circuit held that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation . . . account[s] for a claimant's limitation in concentration, persistence, or pace." *Id.* Thus, the Fourth Circuit remanded the case, because the ALJ failed to address a relevant factor in the claimant's RFC. *Id.*

Conversely, an ALJ satisfies *Mascio* by "providing a detailed discussion of Plaintiff's capacity for concentration, persistence, or pace." *See Thomas v. Colvin*, 2016 WL 1070826, at *4 (E.D. Va. Mar. 16, 2016) (finding *Mascio* satisfied because substantial evidence supported the RFC, and finding no inconsistency in the ALJ's assessment of the plaintiff's concentration, persistence or pace limitations). Multiple district courts in the Fourth Circuit have held that the

ALJ's RFC assessment satisfies *Mascio* as long as it provides a detailed discussion of the plaintiff's capacity for concentration, persistence or pace. *See Sizemore v. Colvin*, 2016 WL 483140, at *3 (W.D.N.C. Feb. 5, 2016) (holding that the ALJ satisfied *Mascio* because he specifically explained how the plaintiff's limitations translated into work limitations); *Mitchell v. Colvin*, 2015 WL 5690899, at *5-7 (W.D. Va. Sept. 28, 2015) (distinguishing *Mascio*, because the ALJ relied on medical evidence to support his conclusion and did not summarily conclude that a limitation of simple, unskilled work accounted for the plaintiff's moderate impairment in concentration, persistence and pace); *St. Clair v. Colvin*, 2015 WL 5310777, at *6 (W.D. Va. Sept. 11, 2015) (an RFC assessment relying on medical opinion evidence that the plaintiff could "perform simple and repetitive tasks and maintain regular attendance in the work place," despite having moderate impairment in concentration, satisfied *Mascio*).

These cases establish that *Mascio* did not create a *per se* rule that a plaintiff's moderate impairment in concentration, persistence or pace always translates into an RFC limitation. *Mitchell*, 2015 WL 5690899, at *7. Rather, *Mascio* highlighted the ALJ's duty to review the evidence and explain his decision. *Id.*

In *Linares v. Colvin*, the plaintiff also had moderate limitations with concentration, persistence and pace. 2015 WL 4389533, at *2-*3 (W.D.N.C. July 17, 2015). To account for these nonexertional limitations, the ALJ limited the plaintiff to "simple, repetitive, routine tasks in a stable work environment at a nonproduction pace with only occasional public contact." *Id.* at *3. The court distinguished *Mascio*, where the ALJ had merely limited the plaintiff to "simple, routine tasks or unskilled work." *Id.* at *4 (quoting *Mascio*, 780 F.3d at 638). Instead, the court held that the ALJ in *Linares* went further, accounting for the plaintiff's limitation in pace by restricting her to non-production work, and accounting for her limitations in

concentration and persistence by restricting her to a stable work environment with only occasional public contact. *Linares*, 2015 WL 4389533, at *4.

Other courts in the Fourth Circuit have held that similar limitations adequately account for moderate limitations with concentration, persistence or pace. *See Eastwood v. Colvin*, 2016 WL 805709, at *4 (E.D. Va. Feb. 12, 2016) (holding that the ALJ accounted for the plaintiff's limitations in concentration, persistence and pace by limiting her to (1) few workplace changes, (2) little independent decision-making and (3) less than an assembly line pace); *Massey v. Colvin*, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015) (distinguishing *Mascio* because the ALJ's hypothetical limited the plaintiff's exposure to noise; contact with the public, co-workers and supervisors; changes in his work environment; and, his production pace); *see also Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (holding that restricting a claimant to no high production goals adequately captured the claimant's moderate difficulties with concentration, persistence and pace); *Robinson v. Comm'r of Soc. Sec.*, 2014 WL 4145339, at *10 (E.D. Mich. Aug. 20, 2014) (holding that limiting a claimant to simple, routine, repetitive tasks with no fast-paced production requirements sufficiently accounted for the same moderate difficulties).

Here, the ALJ limited Plaintiff to "simple, routine tasks, not at production rate, where she has no more than occasional changes in routine work setting, occasional contact with supervisors and co-workers, and no interaction with the public." (R. at 23.) Like the ALJ in *Linares*, the ALJ here accounted for Plaintiff's moderate difficulty with pace by restricting her from production rate work. (R. at 23.) By eliminating more than occasional changes in the workplace, and limiting Plaintiff to simple, routine tasks with no public interaction and only occasional interaction with supervisors and co-workers, the ALJ also properly accounted for her moderate difficulties with concentration and persistence. (R. at 23.) The ALJ explained that

Plaintiff's allegedly severe mental limitations lacked consistent support from the record, which revealed that counseling and medication often controlled her conditions. (R. at 26.) Further, the ALJ relied on Plaintiff's daily activities — caring for others, preparing simple meals, grocery shopping, driving, visiting regularly with her sister and attending church — as evidence that Plaintiff retained the capacity to work as outlined in the RFC. (R. at 26.)

Moreover, the ALJ relied on the previously discussed expert opinion evidence to address Plaintiff's moderate limitations in concentration, persistence and pace. (R. at 26.) The state agency experts agreed that Plaintiff could perform simple, routine tasks, and she would struggle with detailed work. (R. at 128, 141.) They opined that Plaintiff should not frequently interact with the public, but as long as she remained properly limited to unskilled work, her mental impairments would not often interrupt her. (R. at 128, 141.) Dr. Ettigi — to whom the ALJ gave partial weight — also opined that Plaintiff had moderate difficulty interacting with the public, co-workers and supervisors. (R. at 658.) He noted her "poor ability to deal with change," but found Plaintiff's ability to understand, remember and carry out instructions unaffected by her mental impairments. (R. at 657-58.) Ultimately, the ALJ limited the simplicity of tasks, rate of production, interaction with others and frequency of workplace changes to accommodate Plaintiff's mental limitations. (R. at 23.)

By incorporating these four limitations into the RFC — and explaining his decision — the ALJ adequately addressed Plaintiff's ability to stay on task and accounted for her difficulties with concentration, persistence and pace. The opinions of the state agency experts and Dr. Ettigi support the RFC assessment given Plaintiff's moderate limitations. Consequently, the ALJ satisfied the requirements of *Mascio*, and substantial evidence in the record supports his decision.

## C. Substantial Evidence Supports the ALJ's Credibility Determination.

Plaintiff argues that the ALJ erred in his credibility determination by not explicitly considering her prior work history. (Pl.'s Mem. at 16-19.) Plaintiff argues that the ALJ should have explicitly taken into consideration her fifteen years of prior work history. (Pl.'s Mem. at 16.) Defendant responds that the ALJ's decision not to explicitly discuss Plaintiff's work history does not constitute reversible error. (Def.'s Mem. at 22.) Defendant further argues that the ALJ did afford Plaintiff's work history appropriate consideration by discussing it at the hearing, explaining that he based his opinion on the entire record and identifying Plaintiff's past relevant work history in his decision. (Def.'s Mem. at 22-23.)

The ALJ must evaluate a claimant's RFC after step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work at step four. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1). In determining Plaintiff's RFC, the ALJ must consider all presented evidence when evaluating a claimant's symptoms, including "information about [the claimant's] past work record." § 404.1529(c)(3). In addition to considering past work, the ALJ considers a variety of other information including statements about the claimant's symptoms, evidence submitted by the claimant's medical sources and evidence submitted by SSA employees and others. § 404.1529(c)(3). The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d at 595-96; SSR 96-7p, at 5-6, 11.

Various district courts have acknowledged that the ALJ should take work history into account and that a robust work history strengthens a claimant's credibility. *See, e.g.*, *Bladley v. Colvin*, 2016 WL 5928811, at *14 (N.D. Ill. Oct. 11, 2016) ("[A] claimant with a good work

record is entitled to substantial credibility when claiming an inability to work because of a disability.") (citing *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015)). Further, district courts have noted that an attempt to return to work enforces a claimant's credibility. *See, e.g., Moncus v. Colvin*, 2013 WL 4854518, at *3 (E.D.N.C. Sept. 11, 2013) ("[P]laintiff's attempts to return to work . . . support his credibility."). However, while work history remains relevant to a credibility determination, it is but one of many factors in consideration and not controlling. *Maner v. Colvin*, 2014 WL 4656383, at *5 (D.S.C. Sept. 17, 2014).

Courts in the Fourth Circuit have confirmed that "the ALJ's mere failure to mention [a claimant's] work history explicitly does not warrant remand or reversal in the face of otherwise supported findings." *Terrell v. Colvin*, 2015 WL 966256 (E.D. Va. Mar. 4, 2015); *see also Pope v. Colvin*, 2016 WL 1211807, at *12 (W.D. Va. Mar. 8, 2016), *R. & R. adopted*, 2016 WL 1226972 (W.D. Va. Mar. 28, 2016) ("[E]ven though the ALJ did not explicitly address the correlation between [the claimant's] work history and her credibility, the ALJ was well aware of her work history, as he developed the evidence of such . . . during the hearing."); *Cooper v. Astrue*, 2011 WL 6742500, at *7 (E.D. Va. Nov. 8, 2011), *R. & R. adopted*, 2011 WL 6749018 (E.D. Va. Dec. 22, 2011) (finding that work history alone does not contravene an ALJ's credibility finding where substantial objective medical evidence in the record does not support a plaintiff's subjective complaints). Thus, when the ALJ appropriately considers all relevant factors, hears the claimant's testimony and observes her demeanor, the ALJ's credibility determination deserves deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Overall, this Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the

reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Eldeco, Inc.*, 132 F.3d at 1011 (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Here, during the hearing, the ALJ inquired about some of Plaintiff's work history and further acknowledged it in his opinion. (R. at 21, 28, 41-43, 61-62.) Both Plaintiff's attorney and the ALJ asked Plaintiff about her work as an online customer service representative at various banks during the hearing. (R. at 41-43, 61-62.) Plaintiff's attorney also questioned whether caring for her mother and stepfather qualified Plaintiff as a home healthcare companion, suggesting this action instead amounted to a familial relationship. (R. at 68-69.)

In his decision, the ALJ mentioned Plaintiff's recent work history at Wells Fargo and other past relevant work as a customer service representative and a home healthcare companion. (R. at 21, 28.) Further, the ALJ referenced a multitude of evidence included in the record to support his conclusion, including Plaintiff's medical records, other medical documents, past work history, activities of daily living and the VE's analysis. (R. at 21-28.)

The ALJ appropriately considered Plaintiff's past work history when rendering his decision. Plaintiff and the VE testified about her past work history during the hearing, and the ALJ acknowledged this work history in his decision. (R. at 21, 28, 41-43, 61-62.) Further, no exceptional circumstance exists in the record to prompt the Court not to give the mandated deference to the ALJ's credibility determination. *Eldeco, Inc.*, 132 F.3d at 1011. Thus, substantial evidence from the record supports the ALJ's credibility determination.

## V. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Plaintiff's Motion for

Summary Judgment (ECF No. 12), GRANTS Defendant's Motion for Summary Judgment (ECF

No. 14) and AFFIRMS the final decision of the Commissioner.

An appropriate Order consistent with this Memorandum Opinion shall be issued.

Let the Clerk forward a copy of this Opinion to all counsel of record.

It is so ORDERED.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: January 3, 2018